MICHIGAN STATE EMPLOYEES ASSOCIATION v CIVIL SERVICE
COMMISSION

Docket No. 61689. Decided June 18, 1979. On application by the
plaintiffs for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals and remanded the case to the Civil Service Commis-
sion for further proceedings.

Charles R. Gilliard, a state civil service employee, was dismissed
from his employment with the Department of Social Services
for welfare fraud on September 24, 1975. The matter was also
referred to the United States Attorney's office, but Gilliard was
acquitted of all criminal charges by a jury on September 28,
1976. The next day he requested reinstatement in his former
job. The request was denied on the ground that it was made
one year and four days after his dismissal, and was therefore
barred by the Grievance and Appeal Procedure for Employees
in the State Civil Service, which provided a maximum of one
year after the occurrence for filing a grievance. The Michigan
State Employees Association and Gilliard brought an action for
mandamus and a declaratory judgment, seeking his reinstate-
ment or an administrative hearing, against the Civil Service
Commission, the Director of the Department of Social Services,
the Wayne County Department of Social Services, and others.
The Ingham Circuit Court, Ray C. Hotchkiss, J., granted sum-
mary judgment for the defendants. The Court of Appeals, D. E.
Holbrook, Jr., P.J., and M. J. Kelly and Everett, JJ., affirmed in
an unpublished per curiam opinion (Docket No. 77-3441). Plain-
tiffs apply for leave to appeal. *Held:*

1. Plaintiff Gilliard is entitled to a civil service hearing on his
dismissal from employment because the time for processing his
grievance under the Civil Service Grievance and Appeal Proce-
dure was tolled from the time of his discharge until his acquit-
tal on the criminal charges. His reluctance to take prompt
administrative action is quite understandable. His primary
concern was to protect himself from the criminal charges
against him. It would have been contrary to sound criminal
defense strategy to enter upon a series of hearings or appeals
before administrative agencies which, in all probability, would

have called for plaintiff Gilliard's own testimony, his version of the fraud alleged and an attempted refutation of any witnesses produced by the Department of Social Services. He was entitled to remain silent and to force the government to prove its case, if any, against him. Laches and failure to exhaust administrative remedies scarcely can be asserted under these circumstances. Furthermore, there might be a real question whether due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a criminal charge that is pending against him.

2. Once investigation is begun with an eye toward potential criminal prosecution, the time for processing a civil service grievance is tolled at least until the investigation is completed. If a criminal prosecution results, the tolling continues until the prosecution terminates. Here the prosecution terminated when the plaintiff was acquitted. Consequently, he is entitled to a grievance hearing on his discharge from employment.

Reversed, and the case is remanded to the Civil Service Commission for further proceedings.

*Fraser, Trebilcock, Davis & Foster* (by *Michael E. Cavanaugh* and *Ronald L. Jacobs)* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *Robert N. Rosenberg,* Assistants Attorney General, for defendants.

PER CURIAM. The plaintiff[1] in this case was discharged from his position with the Michigan Department of Social Services due to alleged welfare fraud. Ultimately, criminal charges were filed against him in Federal court. However, the plaintiff was acquitted of all charges. He thereafter requested reinstatement to his former position, but his request was refused. The question for decision is whether the plaintiff's duty to timely process an administrative appeal before the defendant Michi-

---

[1] Plaintiff Charles Gilliard was joined in this suit by the Michigan State Employees Association. For purposes of this opinion, however, references to the "plaintiff" will pertain solely to Mr. Gilliard.

gan Civil Service Commission was tolled by virtue of the criminal investigation, charges, and trial which followed. We answer the question in the affirmative.

I

On or about September 24, 1975, the plaintiff Charles R. Gilliard was informed by his supervisor that he was being discharged for alleged involvement in welfare fraud. On September 25, 1975, he was sent a Western Union Mailgram from the Michigan Department of Social Services which confirmed the communication from his supervisor. At the time of the plaintiff's termination, he was further notified that the matter was being referred to the United States Attorney's office for possible criminal prosecution.

In April 1976, the plaintiff was indicted for alleged welfare fraud. A jury trial was held in September 1976 and on September 28, 1976, the plaintiff was acquitted of all charges. The following day, September 29, 1976, the plaintiff sought reinstatement to his former position with the Michigan Department of Social Services. However, the plaintiff was informed that his failure to file a timely grievance after his discharge in September 1975 barred review of his discharge. The civil service rule which governs this area is Grievance and Appeal Procedure for Employees in the State Civil Service, part I, § 5, which provided in relevant part:

"b. Grievances shall be presented within 10 weekdays of the employee becoming aware of the cause of the grievance. Civil Service Department staff decisions shall be appealable within 20 weekdays of notice to the employee.

"c. Late appeals at any step may be filed only upon showing of good cause for delay.

"d. Regardless of belated awareness of the cause of grievance or of good cause for late filing, no grievance shall be filed on events, nor relief be retroactive to events, which occurred more than 90 calendar days before the filing date; however, the department, hearing officer or arbitrator may accept grievances and grant retroactive relief of up to one year after occurrence if special extenuating circumstances are found."

Since the plaintiff's request for reinstatement was not made until one year and four days after his termination, it was the position of the defendants that his request for review of his discharge was barred.

Thereafter, the plaintiff filed a complaint in Ingham Circuit Court, seeking a writ of mandamus compelling the defendants to reinstate him to his former position. The plaintiff also asked for a declaratory judgment concerning his right to reinstatement or to a due process hearing. On August 31, 1977, the circuit court granted the defendants' motion for summary judgment, finding that the complaint had failed to state a claim on which relief could be granted and that as a matter of law the defendants were entitled to judgment.

The Court of Appeals, in an unpublished per curiam opinion issued on June 12, 1978, affirmed.

## II

The plaintiff argues that he is entitled either to automatic reinstatement to his prior position due to his acquittal of criminal charges or at least to a hearing with regard to his dismissal because the time limitations set forth in the Civil Service Grievance and Appeal Procedure were tolled while the criminal charges were pursued.

We are persuaded that the plaintiff is entitled to a hearing.

In *Peden v United States,* 206 Ct Cl 329, 338; 512 F2d 1099 (1975), the United States Court of Claims expounded on the relationship between civil administrative proceedings and criminal charges. The Court noted:

"We believe it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way."

It is safe to conclude that in this case, at the point that the plaintiff's employment was terminated, a criminal prosecution involving the same facts was at least "warming up".

In *Finfer v Caplin,* 344 F2d 38 (CA 2, 1965), the United States Court of Appeals for the Second Circuit, while affirming on other grounds, dismissed the contentions of the Commissioner of Internal Revenue that the failure of an IRS agent (whose employment had been terminated for allegedly accepting a bribe from a taxpayer) to timely pursue administrative remedies in the face of criminal charges barred the agent's post-acquittal request for reinstatement. In reaching this conclusion, the United States Court of Appeals outlined the considerations which militated against the conclusion urged by the Commissioner of Internal Revenue:

"Finfer's reluctance to take prompt administrative action is quite understandable. Arrested on March 17, 1960 and indicted on March 31st, he had much more to worry about than the niceties of appeals from suspension and removal notices. His primary concern (and

undoubtedly that of his counsel as well) was to protect himself from the criminal charges against him. It would have been contrary to sound defense strategy to enter upon a series of hearings or appeals before administrative agencies which would in all probability have called for Finfer's own testimony, his version of the alleged bribe and an attempted refutation of witnesses which might have been produced by IRS. He was entitled to remain silent and to stand on his right to force the government to prove its case, if any, against him. For this reason, laches and failure to exhaust administrative remedies scarcely can be asserted under the circumstances here presented.

"The Commissioner argues that 'by not appealing appellant waived an opportunity to have his case reviewed on the merits by an impartial body.' But no matter how impartial the body, an adverse determination on the merits, particularly if Finfer had testified, would not have helped his criminal case—in fact, it might have been highly detrimental. The Commissioner suggests that Finfer 'should have taken a prompt appeal to the Commission, applied for an extension of time, to avoid any possible prejudice to his pending criminal trial, and abided further developments.' Possibly, in retrospect, this procedure might have been wise but what if an extension had not been granted and the appeal had been dismissed for want of prosecution? Would not such failure be urged as an abandonment of his remedies? Furthermore, there might be a real question as to whether 'due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a serious criminal charge that is pending against him.' *Silver v McCamey*, 95 US App DC 318 [320]; 221 F2d 873, 874-875 (1955)." 344 F2d 38, 40.

We find the above-quoted reasoning persuasive. We hold that the time for processing the plaintiff's grievance under the Civil Service Grievance and Appeal Procedure was tolled from the point of the plaintiff's discharge until the acquittal on all criminal charges. The plaintiff was informed at the

time of his discharge that the matter was being referred for possible criminal prosecution. Once investigation is begun with an eye toward potential criminal prosecution, the time for processing a grievance is tolled at least until the investigation is completed. If a criminal prosecution results, the tolling continues until the prosecution terminates. Here the prosecution terminated when the plaintiff was acquitted. Consequently, the plaintiff is entitled to a hearing with regard to his discharge.

Accordingly, we now, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, reverse the judgments of the Court of Appeals and of the Ingham Circuit Court and remand the case to the Michigan Civil Service Commission for proceedings consistent with this opinion. We retain no jurisdiction.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.